UNITED STATES DISTRICT COURT FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
SIMON GOLDVEKHT,

                   Plaintiff,                            MEMORANDUM
      -against-                                   AND ORDER
                                                    08-CV-1494 (JG)
UNITED FEDERATION OF TEACHERS,

                  Defendant.
--------------------------------------------------------------X
A P P E A R A N C E S:

       SIMON GOLDVEKHT
            3029 Brighton 12th St., Apt. D-7
            Brooklyn, NY 11235
            Plaintiff, *Pro Se*

       JAMES R. SANDNER
            52 Broadway, 9th Floor
            New York, NY 10004
       By:    Ariana A. Gambella
            *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

      Simon Goldvekht brings this *pro se* action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination and Employment Act of 1967 ("ADEA") alleging that the United Federation of Teachers ("UFT") failed to properly represent him in a dispute with his employer, the Board of Education of the City School District of the City of New York ("Board"), because of Goldvekht's age and his national origin. For the reasons stated below, I deny the defendant's motion to dismiss Goldvekht's claims.

BACKGROUND

      Goldvekht, who was born on March 4, 1950, is a Jewish immigrant from the former Soviet Union. He works as a paraprofessional at Public School 254 ("P.S. 254") in Brooklyn, New York. On August 20, 2008, Goldvekht filed a form complaint, supplemented by

numerous attachments.  In the space on the form complaint for indicating the statute(s) under which the plaintiff wishes to sue, Goldvekht put a check mark next to Title VII.  In the space for indicating the type of discriminatory conduct alleged, Goldvekht put a check mark next to "Other acts" and wrote the following:  "Negligence of U.F.T. to investigate my allegations and provide me with the service that I deserve (I consider this negligence/ignoring as descrimination [*sic*]) (However, it's not clear to me what are the grounds for the discrimination, which persists to this day.)  The reason U.F.T. discriminates against me is unclear."  Compl. 3.  Goldvekht did not check any boxes indicating the basis (race, religion, age, etc.) of the alleged discrimination.

The documents attached to the form complaint describe an incident involving Goldvekht and a student that occurred on April 7, 2006.  The student claimed that Goldvekht physically abused her by pulling her arm in an attempt to take her to a school counselor following an incident of disruptive behavior in class.   On April 12, 2006, Goldvekht, accompanied by his union representative, met with principal Linda Alhonote to discuss the incident.  In a written statement dated April 15, 2006,  Goldvekht claimed that the complaining student and another student who witnessed the incident had submitted false statements, and that a third student had been coached into making false statements by the complaining student. Alhonote then drafted a disciplinary letter, dated April 28, 2006, concluding that Goldvekht had pulled the student's arm in violation of Chancellor's Regulation A-420.  On May 18, 2006, Goldvekht signed a copy of the letter indicating that he had received it and understood that a copy would be placed in his file.

Following this incident, Goldvekht sent three letters to Randi Weingarten, UFT's president, complaining that Alhonote's decision was biased and failed to consider Goldvekht's account of the incident and requesting that UFT investigate the incident.

In a July 6, 2006 letter to New York City Mayor Michael Bloomberg, Goldvekht stated that he received no response to his first two letters to UFT President Weingarten, and that when he personally delivered the third letter to her office, he was told to contact UFT's District 22 Representative, Fred Gross. Goldvekht says that he met with Gross on June 28 and was told that UFT would not investigate the incident because Goldvekht had not lost his job as a result of it. Goldvekht opined that Alhonote had a "biased opinion" of him and his performance, as indicated by the June 2006 End Term Evalution he attached to his letter. Jul. 6, 2006 Letter 2. In this evaluation, Alhonote described Goldvekht's attendance and punctuality as satisfactory, and his performance in all other categories, as well as his overall performance, as "good." *Id.* (unpaginated exhibit). Goldvekht signed the evaluation on June 26, 2006, but wrote that he disagreed with it, specifically noting that he took only one personal day during the 2005-2006 school year and had never been late.

On September 19, 2006, Goldvekht wrote a letter to Gross, attaching the documents related to his case and asking Gross to tell him "when the case will be reviewed again." Sept. 19 Letter 1. This letter states that Gross and Goldvekht had a conversation about the matter on September 18. On October 15, 2006, Goldvekht again wrote to Gross, this time to file "an official grievance" against Alhonote for her handling of the April 7 incident and to demand that Alhonote remove the disciplinary letter from her file. Oct. 15, 2006 Letter 1.

In December 2007, Goldvekht wrote nearly identical letters to the Equal Employment Opportunity Commission ("EEOC"), Human Rights Watch, the United Nations High Commissioner for Human Rights, and the Hebrew Immigrant Aid Society. These letters state that

> While I received no official reply [to the October 15 grievance], I did receive a
> visit from Mr. Gross on November 27, 2006, when he was at P.S. 254 to discuss

> the new union contract. Mr. Gross informed me that the internal investigation proved my innocence, but that Ms. Alhonote still refused to remove the letter of disciplinary action against me from my work file; that he could do nothing further; and that the official response to me from the union was not forthcoming.

Dec. 10, 2007 Letter to EEOC 2. Goldvekht also stated that he met with Gross and union chapter leader Eva Dilfanian on October 3, 2007. At this meeting, Gross allegedly denied receiving Goldvekht's grievance, and stated that since there was no "paper trail" to indicate that Goldvekht had requested an investigation, there would be no written response from UFT. *Id.* at 3. Goldvekht also claimed that Alhonote informed him that she had been "specifically instructed" by Gross not to conduct a reinvestigation. *Id.*

These letters also state that Alhonote "holds a biased opinion" of Goldvekht and his performance. *Id.* at 2. When he complained to her that the disciplinary letter had prevented him from getting a job elsewhere,

> she openly stated that the reason I would not get a job elsewhere was not my record, but rather my Jewish-Russian accent. Prior to this statement, principal Alhonote on a number of occasions has made fun of, and some derogatory remarks [*sic*] regarding my accent, although she appears to have no problem with teachers with Asian, German, Australian, and British accents in their English pronunciation."

*Id.*

Also attached to Goldvekht's complaint is an EEOC Charge form dated January 28, 2008. It names both Alhonote and UFT as the parties that Goldvekht believes discriminated against him, and indicates age and national origin as the bases for discrimination. It lists April 9, 2006 as the earliest date of discrimination and November 5, 2007 as the latest date, and indicates that the discrimination is ongoing. Goldvekht's exhibits also contain four additional letters he sent to EEOC personnel relating to his claim. In a letter dated July 7, 2008, the EEOC notified Goldvekht that its inquiry failed to indicate that any violation occurred. The letter states that

there is no evidence that UFT discriminated against Goldvekht based on his age or national origin, but does not discuss his charge against Alhonote.

DISCUSSION

A.    *Motion to Dismiss*

UFT argues that, to survive a motion to dismiss claims brought pursuant to Title VII and the ADEA, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination, as well as circumstances giving rise to a plausible inference of discriminatory intent."  Def. Mem. 6 (citing *Yusuf v. Vassar College*, 35 F.3d 709, 713-714 (2d Cir. 1994)).  Thus, according to UTF, Goldvekht must plead facts sufficient to demonstrate that (1) the employer violated the collective bargaining agreement; (2) that the union allowed the violation to go unrepaired in breach of its duty of fair representation; and (3) that it was motivated by discriminatory animus in doing so.  This three-part test for establishing a Title VII discrimination claim against a union was articulated by the Seventh Circuit in *Bugg v. International Union of Allied Industrial Workers,* 674 F.2d 595, 598 n.5 (7th Cir. 1982), and is modeled on the requirements for a prima facie case of employment discrimination announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The most glaring problem with this standard is its complete disregard of recent Rule 12(b)(6) jurisprudence.   Second Circuit cases such as *Yusuf*, which require a plaintiff to plead a prima facie case of discrimination in order to survive a motion to dismiss, were effectively overruled in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), in which a unanimous Supreme Court clarified that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."  It then concluded that the complaint in question

5

easily satisfies the requirements of Rule 8(a) *because it gives respondent fair notice of the basis for petitioner's claims*.  Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA.  His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.  These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.

*Id.* at 514 (emphasis added; internal citations omitted).  Accordingly, UFT's arguments that Goldvekht's complaint is wholly conclusory, or fails to plead facts that establish a prima facie case of discrimination, miss the mark. [1]

However, as the Second Circuit has observed, "the appropriate standard for assessing the sufficiency of pleadings under Rule 8(a) is the source of some uncertainty" following the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2008) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007)).  "Although much of the Court's language [in *Twombly*] addressed the pleading standards for a [Sherman Act] section 1 claim and the burdens of antitrust litigation specifically, the Court's reasoning suggested that it intended to make some alteration in the regime of pure notice pleading."  *Id.* (internal citations and quotation marks omitted).  In addition, the *Twombly* Court "explicitly rejected" the oft-repeated maxim of *Conley v. Gibson*, cited by both UFT and

---

[1]     Bugg's prima facie test is problematic for other reasons as well.  The Seventh Circuit announced this test, without explanation, in a footnote, and it has never been adopted by the Second Circuit.  Its reference to the duty of fair representation appears circular, because a union violates that duty when its conduct is "arbitrary, *discriminatory*, or in bad faith."  *Smith v. Sipe*, 67 N.Y.2d 928, 929 (1986) (emphasis added).  Its requirement that a plaintiff actually prove a violation of the CBA in order to prevail against a union is also suspect.  First, it does not appear that the plain language of the statute or any binding case law imposes this requirement.  The Supreme Court has explicitly concluded that a refusal to file a discrimination grievance on the basis of race (or some other protected ground) violates the plain language of the relevant provision of Title VII, and did so without requiring a plaintiff to prove a violation of the CBA.  *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987).  The employer's conduct does not seem to have independent significance; instead, the merits of the grievance seem relevant only as they illuminate a union's motivations for failing to prosecute that grievance.  Second, requiring a plaintiff to prove a CBA violation in order to successfully prove that the union discriminated against a member by refusing to prosecute a grievance seems analogous to requiring a plaintiff to prove a valid discrimination claim in order to succeed on a retaliation claim, an approach the Second Circuit has rejected.  *See, e.g., Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (plaintiff need only show "good faith, reasonable belief" that employer's conduct

Goldvekht, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted). In *Iqbal*, the Second Circuit concluded that *Twombly* does not require "a universal standard of heightened fact pleading," but instead imposes "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." 490 F.3d at 157-58.

Nonetheless, the Second Circuit's subsequent decision in *Boykin* strongly suggests that *Twombly* does not significantly alter the lenient, notice-focused standard used to assess the complaint of a *pro se* litigant like Goldvekht:

> We need not locate the outer bounds of *Twombly*'s new standard for assessing pleadings under Rule 8(a) here, because no amplification was necessary in this case. After *Twombly*, the Supreme Court issued another decision addressing the sufficiency of a pleading under Rule 8(a), but this time specifically for a complaint filed pro se. *See Erickson v. Pardus*, ---U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). The Court reversed the Tenth Circuit's dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8(a). *Id.* at 2200. The Court reiterated that "[s]pecific facts are not necessary," and that the complainant "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 127 S.Ct. at 1964 (internal quotation marks omitted) (alteration in original)). But *Erickson* also emphasized that the court of appeals' departure from Rule 8(a)'s liberal pleading standard was particularly unwarranted because the complainant was pro se: "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citations omitted).

*Boykin*, 521 F.3d at 213-14. Thus, the Second Circuit held that because Boykin "identified the particular events giving rise to her claim and alleged that she was treated less favorably than other loan applicants because of her race, her gender and location of her property," she had adequately pleaded a discrimination claim. *Id.* at 215.

was unlawful to prove retaliation (internal quotation marks omitted)).

Similarly, Goldvekht's complaint and exhibits satisfactorily allege that UFT failed to prosecute his grievance against Alhonote because of his national origin and age. UFT claims that Goldvekht "neglected to state a single fact in his Complaint explaining how or in what ways the UFT may have been negligent in conducting an investigation . . .[,] is unable to identify the grounds upon which the alleged discrimination rests . . . [, and] has neglected to allege a time period or even a single date to which his claims refer." Def. Mem. 9. However, as UFT concedes, on a motion to dismiss, a district court may consider both the face of the complaint and any documents attached as exhibits or incorporated by reference. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). The numerous letters attached to Goldvekht's complaint repeat over and over again his allegations regarding the union's misconduct -- that the union failed to pursue his complaint even though it determined that he had been falsely accused, and that District Representative Gross claimed that UFT could pursue this course with impunity because he erroneously believed that there was no documentation of the grievance. The dates of Goldvekht's interactions with union personnel are meticulously noted. Furthermore, while the face of Goldvekht's complaint states that he is unaware of the reason for UFT's conduct, the attached EEOC complaint alleges that it is based on his age and national origin.

UFT also argues that it handled Goldvekht's complaint properly. Specifically, it alleges that Goldvekht's grievance "did [not] survive the initial step of the grievance procedure" because he waited seven months to file it, rendering it untimely. Def. Mem. 8. However, the argument that the union's failure to prosecute was based not on Goldvekht's national origin or age, but on the untimeliness of the grievance, particularly when the Collective Bargaining Agreement provides only that grievances must be filed "within a reasonable amount of time following the action complained of," *id.* at 8 n.3, is a factual argument that should not be

resolved on a motion to dismiss. Accordingly, I conclude that Goldvekht's complaint and its attached exhibits contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The fact that Goldvekht's exhibits repeat this statement more times than necessary does not alter my conclusion.

Rule 8(a)(3) requires that a complaint also contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Although the space on Goldvekht's complaint addressing relief was left blank, he indicated at oral argument that he seeks damages for UFT's alleged violations of Title VII and the ADEA. Accordingly, I construe Goldvekht's complaint as seeking damages and any other relief this Court deems appropriate.

B.      *Goldvekht's Duty of Fair Representation Claims*

UFT suggests that Goldvekht's complaint could be construed to allege that UFT breached its duty of fair representation in violation of the Labor Management Relations Act and New York common law. However, Goldvekht contends that "this is a *Title VII* and *ADEA* claim, and not a breach of duty of fair representation claim." Pl. Mem. 3. Accordingly, I do not construe Goldvekht's complaint as raising such claims, and need not address UFT's arguments that these claims should be dismissed.

CONCLUSION

For the foregoing reasons, the motion to dismiss is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated:  January 20, 2009
        Brooklyn, New York